IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| TYREE JACKSON, | : | |
| --- | --- | --- |
| *Plaintiff*, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| CORIZON HEALTH, INC., et al., | : | No. 17-2838 |
| *Defendants*. | : | |

## MEMORANDUM

PRATTER, J.  JULY 16, 2019

Tyree Jackson is a prisoner with chronic intestinal illnesses. For five months in 2015, he was temporarily transferred from federal prison to city custody in Philadelphia, Pennsylvania at the Curran-Fromhold Correctional Facility ("CFCF"). Mr. Jackson alleges that Corizon Health, Inc., CFCF's medical provider, failed to address his medical needs because it had a policy or custom of delaying medical treatment when an inmate was about to be transferred out of CFCF. Mr. Jackson claims that these delays and his inadequate medical treatment caused him to suffer severe symptoms, lose 60 pounds, and undergo invasive surgery. He asserts one Eighth Amendment claim under 42 U.S.C. § 1983.[1]

Corizon now moves for summary judgment, arguing that Mr. Jackson's § 1983 claim should be dismissed for four reasons:

> 1) Mr. Jackson cannot establish that Corizon maintained a policy or custom approved by a final policymaker concerning the delay of treatment to prisoners who were about to be transferred out of CFCF;

---

[1] Mr. Jackson originally brought this case *pro se* against Corizon and several members of its staff. The case was placed on the Prisoner Civil Rights Panel and eventually taken on by an attorney. The latest iteration of the complaint—Mr. Jackson's first complaint with counsel—asserted claims against Corizon, Dr. Vivian Gandy, and Almedia Frias. The parties have since filed joint stipulations dismissing Dr. Gandy and Ms. Frias from the case. Therefore, only Mr. Jackson's claims against Corizon remain before the Court.

1

2) Mr. Jackson did not exhaust his claims as required by the Prison Litigation Reform Act;

3) Mr. Jackson cannot establish deliberate indifference; and

4) Mr. Jackson cannot establish that the defendants' actions, or inactions, caused his constitutional injury.

The Court need only address Corizon's first argument. To survive summary judgment on a § 1983 claim against a private health company providing services to inmates, like Corizon, a plaintiff must "provide evidence that there was a relevant . . . policy or custom, and that the policy caused the constitutional violation [he] allege[s]." *See Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 583–84 (3d Cir. 2003). As Mr. Jackson's counsel conceded during oral argument on Corizon's Motion for Summary Judgment, there is no evidence on the record suggesting that Corizon maintained a policy or custom of delaying treatment when an inmate was about to be transferred out of CFCF. Therefore, the Court will grant Corizon's Motion for Summary Judgment and dismiss Mr. Jackson's remaining claim.

## BACKGROUND

Mr. Jackson has suffered from Crohn's disease, irritable bowel syndrome, ulcerative colitis, and gastrointestinal reflux disease for over thirty years. Exh. D. to Corizon's Mot. for Sum. J. (*hereinafter* Mr. Jackson's Deposition Tr.) at 23:23–24:23. Prior to Mr. Jackson's relevant period of incarceration, gastroenterologist Dr. Farzana Rashid of the Penn Presbyterian Medical Center treated Mr. Jackson's conditions. *Id.* at 33:25–34:11.

Mr. Jackson was placed in federal custody for aggravated identity theft and passport fraud in 2014. *Id.* at 19:23–23:22. He was transferred to CFCF, a Philadelphia County prison, on June 19, 2015 and remained there until November 12, 2015. *See* Exhibit C to Corizon's Mot. for Sum. J. (*hereinafter* Medical Records) at 1–2.

2

While detained at CFCF, Mr. Jackson was seen by Corizon medical staff over twenty times concerning his intestinal issues, including for complaints of abdominal pain, constipation, and blood in his stool. The medical records show that Mr. Jackson was examined, given diagnostic tests—including x-rays and blood work—provided medications (although not always the medications he preferred), and sent out to hospitals for treatment and additional diagnostic testing on several occasions when his symptoms intensified. For example,

- Mr. Jackson was sent to Aria Hospital's emergency room following complaints of abdominal pain and vomiting on July 27, 2015. Mr. Jackson underwent a CT scan, the results were "unremarkable," and Mr. Jackson was discharged. *See* Medical Records at 135–43.

- After Mr. Jackson's July visit to the ER, Dr. Bruce Blatt—who was Mr. Jackson's primary treating physician within CFCF, *see* Mr. Jackson's Deposition Tr. at 132:8–20[2]—scheduled an appointment for Mr. Jackson to see Dr. Rashid at Penn Presbyterian on September 9. *See* Medical Records at 332.

- Mr. Jackson was sent to Penn Presbyterian after complaining of abdominal pain and constipation on August 25. After another CT scan and more "unremarkable" lab work, Mr. Jackson was discharged. The discharge papers state that Mr. Jackson was instructed "to follow up with his PCP and gastroenterologist at his upcoming scheduled appointment." *Id.* at 359

- On September 9, Mr. Jackson saw Dr. Rashid at Penn Presbyterian. Dr. Rashid indicated that Mr. Jackson's Crohn's disease seemed stable. Among other testing, she requested that Mr. Jackson undergo a Magnetic Resonance Enterography. *See* Medical Records at 85–86.

At this stage in the litigation, Mr. Jackson's allegations are focused on Corizon's failure to schedule him for an MRE as recommended by Dr. Rashid. However, the medical records suggest that Dr. Blatt scheduled Mr. Jackson for an MRE, and that the MRE was cancelled for reasons outside of Corizon's control:

- On September 10, the day after Mr. Jackson saw Dr. Rashid, Dr. Blatt made a note indicating that there was a referral for an MRE. *Id.* at 85.

---

[2] Mr. Jackson (or perhaps the stenographer recording Mr. Jackson's deposition) mistakenly referred to Dr. Blatt as "Dr. Black" during Mr. Jackson's deposition.

3

- On October 1, Dr. Blatt noted that he saw Mr. Jackson in the Chronic Care Clinic and that Mr. Jackson was "eating well and [had] actually gained a few pounds in the last several months. [Mr. Jackson] denie[d] nausea or vomiting [sic] and occasionally ha[d] mild-right sided discomfort. [P]atient ha[d] been constipated and ha[d] tried colace, lactulose without success. [H]e denie[d] any blood in stool." *Id.* at 57. Dr. Blatt also noted that Mr. Jackson's MRE was scheduled for September 30, but that the Hospital of the University of Pennsylvania's radiology department cancelled it because of confusion surrounding the test. *Id.*

- On October 2, Dr. Blatt noted that Dr. Rashid's office would reschedule the MRE and would notify the prison about the date. Dr. Blatt also noted that a Corizon nurse confirmed that the other labs recommended by Dr. Rashid were drawn at Mr. Jackson's last Remicade Infusion.[3] *Id.* at 52.

- Mr. Jackson received an MRE on October 7 after Dr. Blatt sent him to Penn Presbyterian following renewed complaints of abdominal pain and blood in his stool. *Id.* at 44, 283.

The MRE revealed, among other things, a "chronic ileocolic fistula." *Id.* at 283. The next day, Mr. Jackson underwent a colonoscopy at Penn Presbyterian, which also revealed "Crohn's of [the] terminal ileum with scarring and marked stenosis and an ileocecal fistula." *Id.* To address the fistula, Dr. Rashid recommended an "ileocecectomy," an invasive surgery, or a "balloon dilation," a less intrusive procedure which may not have provided a permanent solution. *Id.* Mr. Jackson elected to undergo the ileocecectomy, and the surgery was performed on October 15, 2015. *Id.* During this procedure, the surgeon removed several of Mr. Jackson's organs, including his right colon, cecum, terminal ileum, appendix, transverse colon, and 20 to 40 centimeters of his intestines. Mr. Jackson claims that he has had complications resulting from this surgery ever since.

In contrast to the medical records, Mr. Jackson testified at his deposition that Dr. Blatt never scheduled the MRE, that Corizon staff ignored his sick calls, and that the delays in his

---

[3] Mr. Jackson was sent to an outside hospital approximately every four weeks to receive Remicade injections, a chemotherapy-like drug that is sometimes used to treat Crohn's disease. *See* Medical Records at 59–60, 94–95, 128, 174, 193–95.

treatment caused his symptoms to worsen, resulting in his hospitalization in early October and the need for him to undergo the ileocecectomy. Mr. Jackson testified that Corizon staff frequently asked him about his transfer date throughout his time at CFCF. Specifically, Mr. Jackson testified that, after Dr. Rashid recommended the MRE, Dr. Blatt asked Mr. Jackson when he would be transferring back to federal prison. Mr. Jackson's Deposition Tr. at 68. He further testified that during the same visit, Dr. Blatt called the records department at CFCF and asked when Mr. Jackson would be transferred. *Id.* Mr. Jackson testified that he believed his transfer date and Corizon's desire to save money impacted the cancellation of his MRE because the cancellation occurred around the same time as his re-sentencing hearing and the potential for him to return to federal custody. *Id.* at 68–69.

Mr. Jackson did not depose any Corizon employees during discovery.

## LEGAL STANDARD

A court shall grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact finder could return a verdict for the non-moving party. *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A factual dispute is "material" if it might affect the outcome of the case under governing law. *Id.* (citing *Anderson*, 477 U.S. at 248). Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the non-moving party. *See Anderson*, 477 U.S. at 255. However, "[u]nsupported assertions, conclusory allegations, or mere suspicions are insufficient to overcome a motion for summary judgment." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010).

5

The movant bears the initial responsibility for informing the Court of the basis for the motion for summary judgment and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof on a particular issue, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. After the moving party has met the initial burden, the non-moving party must set forth specific facts showing that there is a genuinely disputed factual issue for trial by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c). Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## DISCUSSION

Corizon argues that Mr. Jackson's § 1983 claim must be dismissed because, among other reasons, Mr. Jackson cannot establish that Corizon maintained a policy or custom approved by a final policymaker concerning the delay of treatment to prisoners who were about to be transferred. The Court agrees. Therefore, the Court will dismiss Mr. Jackson's remaining claim against Corizon.[4]

---

[4] Mr. Jackson's counsel did not address this argument in his brief in opposition to summary judgment. During oral argument, Mr. Jackson's counsel conceded that "I did not respond to that in my motion because . . . I didn't have any evidence that there was any policy or custom . . . ." After oral argument, the parties were given leave to file supplemental briefing. Despite the Court calling attention to this issue, Mr. Jackson's supplemental brief is silent as to any policy or custom

The Third Circuit Court of Appeals has held that "a private health company providing services to inmates 'cannot be held responsible for the acts of its employees under a theory of respondeat superior or vicarious liability.'" *Sims v. Wexford Health Sources,* 635 F. App'x 16, 20 (quoting *Natale v. Camden County Corr. Facility,* 318 F.3d 575, 583 (3d Cir. 2003)). Rather, in order to hold Corizon liable for a constitutional violation under § 1983, Mr. Jackson must "provide evidence that there was a relevant . . . policy or custom, and that the policy caused the constitutional violation [he] allege[s]." *Natale,* 318 F.3d 575, 583–84 (citing *Bd. of the County Comm'rs of Bryan County, Oklahoma v. Brown,* 520 U.S. 397, 404 (1997)); *see also Lomax v. City of Philadelphia,* No. 13-1078, 2017 U.S. Dist. LEXIS 47453, at *18–19 (E.D. Pa. Mar. 29, 2017) ("Because Corizon is a private company contracted by a prison to provide health care for inmates, . . . it can only be held liable for constitutional violations if it has a custom or policy exhibiting deliberate indifference to a prisoner's serious medical needs.") (citations and quotations omitted).

"A policy is made 'when a decisionmaker possessing final authority to establish . . . policy with respect to the action issues a final proclamation, policy or edict.'" *Natale,* 318 F.3d at 584 (quoting *Kneipp v. Tedder,* 95 F.3d 1199, 1212 (3d Cir. 1996)). By contrast, "[a] course of conduct is considered to be a 'custom' when, though not authorized by law, 'such practices of state officials are so permanent and well settled' as to virtually constitute law." *Andrews v. City of Philadelphia,* 895 F.2d 1469, 1480 (3d Cir. 1990) (quoting *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 690 (1978)).

The Third Circuit Court of Appeals has identified three situations where acts of an employee may be deemed to be the result of a policy or custom of the entity for whom the employee works: (1) where the appropriate officer or entity promulgates a generally applicable statement of

---

maintained by Corizon and does not cite to any legal authority suggesting that his claim can proceed without one.

policy and the subsequent act complained of is simply an implementation of that policy; (2) where no rule has been announced as policy but federal law has been violated by an act of the policymaker itself; and (3) where the policymaker has failed to act affirmatively at all, though the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need. *See Natale*, 318 F.3d at 584 (citations and quotations omitted).

The record here does not match any of these three situations. First, as counsel for Mr. Jackson concedes, there is no evidence that Corizon had an affirmative policy that encouraged its employees to delay medical care when patients were close to being transferred. Second, because Mr. Jackson did not depose any Corizon employees or serve an interrogatory on Corizon inquiring about the identity of Corizon's final policymaker, there is no evidence showing that Mr. Jackson's constitutional rights were violated by the act of a final policymaker. Finally, because there is no deposition testimony from Corizon staff admitting that such a policy existed or evidence suggesting that other prisoners may have also had their medical care delayed, there is no way for a reasonable jury to find that the alleged inadequacy of existing practice was so likely to result in the violation of constitutional rights that Corizon's unknown policymaker can reasonably be said to have been deliberately indifferent to the need. *Cf. Natale*, 318 F.3d at 584–85 (holding that a jury could infer that a final policymaker failed to establish a policy to address the medication needs of inmates during the first 72 hours of their incarceration because a nurse testified to the lack of such a policy).

The only evidence on the record suggesting that Corizon had a policy or custom of not treating inmates who would soon be transferred to federal prison in order to save money is Mr.

Jackson's deposition testimony about his own treatment. Alone, Mr. Jackson's testimony about his own treatment is insufficient. *See Marquez v. City of Philadelphia*, No. 14-1284, 2015 U.S. Dist. LEXIS 115938, at *31–32 (E.D. Pa. Sept. 1, 2015) ("Plaintiff merely argues that, despite repeated requests, he was not provided medications. This does not establish a custom or policy.") (citing *Okla. City v. Tuttle*, 471 U.S. 808, 823–24 (1985)).

Even Mr. Jackson's counsel conceded that he does not have "any evidence that there was any policy or custom." Therefore, Corizon is entitled to summary judgment. *See Classen v. Nutter*, No. 15-4078, 2017 U.S. Dist. LEXIS 199269, at *23–24 (E.D. Pa. Dec. 4, 2017) (dismissing § 1983 claim for violation of the Eighth Amendment on summary judgment because the plaintiff did "not cite any evidence on the record of a policy or custom of Corizon Health"); *Lee v. Abellos*, No. 13-486, 2014 U.S. Dist. LEXIS 175984, at *27 (E.D. Pa. Dec. 19, 2014) (dismissing § 1983 claim for violation of the Eighth Amendment on summary judgment because the plaintiff "failed to offer any specific evidence that Corizon ha[d] any custom or policy which was the proximate cause" of the alleged constitutional violations and because the record was "devoid of any deposition testimony [from Corizon employees] concerning policies at Corizon"); *Marquez*, 2015 U.S. Dist. LEXIS 115938, at *31 ("Plaintiff's *Monell* claim against Corizon fails for many reasons. Most notably, it is fatal to Plaintiff's claim that he has not presented any evidence about a Corizon policy or custom that relates to his alleged constitutional violation.").[5]

---

[5]   Because Mr. Jackson's failure to present any evidence of a policy or custom is fatal to his claim, the Court does not address Corizon's other arguments.

## CONCLUSION

For the reasons set out in this Memorandum, the Court grants Corizon's Motion for Summary Judgment. An appropriate order follows.

BY THE COURT:

/s/ Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE